## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **ORMRODE ALLEN BROWN,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:21CV00442 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **HAROLD CLARKE,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Respondent. | ) | |
| | ) | |

*Ormrode Allen Brown, Pro Se Petitioner; Victoria Lee Johnson, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Respondent.*

Petitioner, Ormrode Allen Brown (Brown), a Virginia inmate proceeding pro se, in his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition), contends that his confinement pursuant to a judgment entered by the Circuit Court of Rockingham County is unconstitutional because of prosecutorial or court error, because counsel provided ineffective assistance, or because the evidence was insufficient to support his convictions. Upon review of the record, I conclude that the respondent's Motion to Dismiss must be granted.

I. BACKGROUND.

The Court of Appeals of Virginia, in its per curiam opinion denying Brown's direct appeal on February 13, 2019, summarized the evidence in the light most favorable to the prosecution:

> The convictions arose from a physical conflict between [Brown] and his wife with five individuals: MacKenzie Gray, Lindsay Reed, Mariah Smith, Andre Valentine, and Devon Barnhardt. Gray died as a result of the altercation, and Reed was severely injured.
>
> At trial, the evidence proved that in the late hours of February 4, 2018,[1] and the early hours of the next morning, [Brown] and the other individuals involved were at the Golden Pony, a restaurant and bar [in Harrisonburg, Virginia]. Carla Brown [Carla], [Brown's] wife and codefendant, perceived a slight and became "upset" and "angry" with Gray, Reed, and Smith. [Carla] yelled at them, a bouncer intervened in the argument, and the parties were separated.
>
> At about 1:45 a.m., Gray, Reed, Smith, Barnhardt, and Valentine left the Golden Pony and drove to a [7-Eleven] convenience store. They had been at the store for a brief time when [Brown and Carla] pulled into the parking lot. [Carla] exited the car and saw Reed, Gray, and Smith. She began "talking smack," stating, "They the little bitches right there." [Carla] then began a heated verbal argument with Gray and Smith. The confrontation quickly turned into a physical altercation.
>
> During the physical fight, [Carla] ended up on the ground holding Gray by her hair. Gray was trying to stand, but she could not get up because [Carla] was "pulling her hair down." Reed unsuccessfully tried to separate the women. [Brown] came over to where the women were fighting. Barnhardt and Valentine were standing nearby. Barnhardt told [Brown] that they could "diffuse [sic] the situation" if [Brown] pulled his wife away and Barnhardt pulled "[his] people back." Valentine, who was standing next to [Brown],

---

[1] This date is clearly a typographical error and should read 2017, the year indicated on the Indictments for these events.

heard [Brown] say, "I'm going to kill all of these bitches tonight." [Brown] then pulled out a knife. Barnhardt heard [Brown] say, "[O]ne of you bitches is going to die," and saw [Brown] begin stabbing "with force." Neither Valentine nor Barnhardt saw any other persons in possession of a knife during the incident.

Reed tried to separate Gray and [Carla], and [Brown] stabbed [Reed] in the chest and the back of her head. Barnhardt tried to help Reed, and [Brown] stabbed Barnhardt in the arm. [Brown] then approached [Carla] and Gray. The two continued to fight, with Gray on top of [Carla]. [Brown] stabbed Gray in her neck and back with his knife. Barnhardt tried to help Gray "because they wouldn't let [Gray] go" and she was "really hurt" and bleeding. He grabbed a nearby helmet from a parked scooter and swung the helmet, trying to get [Brown] and [Carla] away from Gray.

Venkats Kola, who was working at the convenience store, testified that the wounded Gray entered the store, asking for help. [Carla] followed Gray into the store and dragged her away from the counter and onto the floor. [Carla] continued to attack Gray inside the store. Several people attempted to come to Gray's aid while she was on the floor, but [Carla] held her in place and continued her physical attack. Using his knife, [Brown] "guard[ed] his wife" while [Carla] assaulted Gray. Finally, Valentine struck [Brown] in the head with a glass beer bottle, and Barnhardt was able to grab Gray from [Carla] and pull her out of the store.

When Officer Dylan Johnson of the City of Harrisonburg Police Department arrived at the scene, Gray was writhing on the ground outside of the store. [Carla] and [Brown] were both inside the store. [Brown] removed a knife from his pocket and threw it to the floor. As [Brown] left the scene, he shouted, "Mother fuckers. You mother fuckers," and "Mother fucking bitch."

[Brown] told Officer Johnson that he did not stab anyone. He also informed Johnson that he had been stabbed during the incident, but Officer Johnson saw no stab wounds on [Brown]. [Brown] additionally told the officer that he had defended [Carla] by "pull[ing]" people off of her. Officer Johnson did not recall seeing any weapons that belonged to the victims or members of their group.

-3-

After the incident, Reed's wounds to her chest and the back of her head required stitches. [Brown] had stabbed Barnhardt with such force that the knife went through Barnhardt's arm. Gray later died as a result of the knife injur[i]es to her neck and torso. One of Gray's stab wounds was three and a quarter inches deep, entered her body through two vertebrae, and struck an artery. Another three and one-half-inch deep stab wound cut her kidney. Photographs and video recordings of the incident were admitted into evidence at trial.

At trial, [Brown], who had twenty-one felony convictions and twenty-six convictions involving lying, cheating or stealing, testified that he and [Carla] had consumed alcohol on the date of the incident. [Brown] claimed that he was not involved in any disputes at the Golden Pony and that he was not aware of any prior arguments between [Carla] and Gray, Reed, or Smith that took place there. In addition, [Brown] directly contradicted two of the statements that he had made earlier to Officer Johnson. First, he admitted that he had not been stabbed during the incident. Second, [Brown] acknowledged he did not try to pull people away from his wife but instead used his knife.

[Brown] testified that after he and [Carla] left the Golden Pony and arrived at the convenience store, [Carla] and Smith argued outside the store and several of Smith's friends approached [Carla]. [Carla] was on the ground with Gray on top of her. [Brown] grabbed his knife from his pocket and "just tried to get the people off [his] wife." [Brown] claimed that he stabbed Gray in an attempt to get her off of [Carla]. According to him, when that did not work, he stabbed Gray again. He stated that it then became a "total melee" and that he tried to protect [Carla] by getting her inside the store. [Brown] suggested that he was trying to "deffuse" [sic] the situation, that he did not intend to hurt anyone, and that he acted in "pure reaction."

Br. Supp. Mot. Dismiss Ex. 2, at 2–4, ECF No. 8-2.

A grand jury returned indictments charging Brown and Carla with multiple counts related to these incidents. They pleaded not guilty and proceeded to a joint jury trial. On January 25, 2018, a jury found Brown guilty of these offenses: first-

degree murder of Gray; attempted first degree murder of Reed; malicious wounding of Barnhardt; malicious wounding of Reed; and being a principal in the second degree to the abduction of Gray.  The jury recommended a life sentence for the first-degree murder conviction, plus prison terms of five years on each count of malicious wounding, two years for abduction, and ten years for attempted murder.  On March 16, 2018, the court imposed the sentences recommended by the jury to run consecutively to each other.

Brown appealed, arguing that the evidence was insufficient to support his convictions, that the trial court erred in refusing a proffered, defense of other jury instruction, and that the trial court erred in failing to remove a sleeping juror.  The Court of Appeals of Virginia denied his petition, and the Supreme Court of Virginia refused Brown's subsequent appeal.  Brown timely filed a pro se Petition for a Writ of Habeas Corpus in the Supreme Court of Virginia, raising substantially the same claims that he now raises in his federal habeas petition.  The Supreme Court granted the respondent's Motion to Dismiss in an twelve-page Order dated April 1, 2021. *Id.* Ex. 5, ECF No. 8-5.

Brown timely filed his federal habeas petition under 28 U.S.C. § 2254. Liberally construed, it alleges the following grounds for relief:

Ground One: The trial court erred by failing to take testimony from individuals who reported Juror Smith's nodding off four times and by failing to replace Smith with an alternate.  Pet. 16–20, ECF No. 1.[2]

Ground Two: Trial counsel provided ineffective assistance when he "failed to move the court to require" testimony about Juror Smith's nodding off four times; when he failed to move for Smith's removal from the jury; and when he "failed to make timely, contemporaneous objection and thusly failed to preserve the matter for direct appeal." *Id.* at 20–21.

Ground Three: Appellate counsel provided ineffective assistance when counsel failed to raise on appeal the violation of Due Process alleged in Ground One under the "ends of justice exception" to Supreme Court of Virginia Rule 5A:18 or "Plain Error." *Id.* at 21–22.

Ground Four: The prosecutor engaged in misconduct and "deliberately prejudiced the jury" by questions related to Brown's choice to exercise his right to remain silent when police tried to question him.  *Id.* at 22–25.

Ground Five: Trial counsel provided ineffective assistance when he failed to move for a curative instruction concerning the prosecutor's misconduct alleged in Ground Four.  *Id.* at 25–27.

Ground Six: Appellate counsel provided ineffective assistance when counsel "failed to raise on appeal the violations of Due Process and Fifth Amendment rights as stated in 'Ground Four'" under the "ends of justice exception" to Supreme Court of Virginia Rule 5A:18. *Id.* at 28–29.

Ground Seven: The prosecutor committed prosecutorial misconduct during closing arguments by making an inaccurate statement of law and inflammatory comments about Brown's prior criminal record, and the trial court erred when it failed to sua sponte provide the jury with a "curative instruction."  *Id.* at 30–34.

---

[2]  Citations to Brown's federal habeas petition use the page numbers assigned to documents by the court's electronic filing system.

Ground Eight: Trial counsel provided ineffective assistance when he failed to object to the prosecutor's statements during closing argument and failed to seek a curative instruction. *Id.* at 35–36.

Ground Nine: Appellate counsel provided ineffective assistance when "counsel failed to raise on appeal the violation of Due Process" alleged in Ground Seven under the "ends of justice exception" of Supreme Court of Virginia Rule 5A:18. *Id.* at 36–38.

Ground Ten: The evidence was insufficient to support Brown's convictions. *Id.* at 38–43.

The respondent has filed a Motion to Dismiss, and Brown has responded, making the matter ripe for disposition. I have also reviewed the extensive state court records, including clips of video footage of the incident that the jurors viewed during trial.

## II. DISCUSSION.

### A. Exhaustion and Procedural Default.

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal district court reviewing a § 2254 petition is also limited by the separate but related doctrines of exhaustion and procedural default. These doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws and allowing states the first opportunity to address and correct

alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

Absent a valid excuse, a state prisoner must exhaust his remedies in the state courts before seeking habeas relief in federal court. 28 U.S.C. § 2254(b)(1)(A). Exhaustion requires a petitioner to present the facts and argument of his federal constitutional claims properly to the appropriate state courts up to the highest state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

The respondent agrees that Brown has exhausted his state court remedies as to the issues raised in Grounds One through Ten of his federal habeas petition. Brown presented Grounds One through Nine in his state habeas petition to the Supreme Court of Virginia, and he presented Ground Ten on direct appeal.

The parties also agree that Grounds One, Four, and Seven of Brown's federal petition are procedurally defaulted under state law. Br. Mem. Supp. Mot. Dismiss Ex. 5, at 1–2, ECF No. 8-5. In habeas proceedings, the Supreme Court of Virginia concluded that these claims were procedurally barred from review on the merits under the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (1974) because Brown failed to raise them at trial or on direct appeal. The *Slayton* decision expressly held that "[a] petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error." *Id.*

If a state court has explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is also procedurally defaulted for purposes of federal habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Because the state court expressly based its dismissal of Grounds One, Four, and Seven on an independent and adequate state ground, Brown is procedurally barred from seeking federal habeas review of these claims. *Prieto v. Zook*, 791 F.3d 465, 468–69 (4th Cir. 2015) (holding *Slayton* rule is independent and adequate state ground).

A federal habeas court will consider a procedurally defaulted claim only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[3] *Coleman*, 501 U.S. at 750. Cause for procedural default requires the existence of some objective factor, external to the defense and not attributable to the petitioner. *Id.* at 756–57. To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "*actual* and substantial disadvantage, infecting his entire trial with

---

[3] To prove a fundamental miscarriage of justice to excuse a procedural default, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Brown has made no such argument in this case.

error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Brown contends that ineffective assistance of counsel regarding each of these issues constitutes cause for his state procedural default of Grounds One, Four, and Seven.  He also alleges, as he did in his state habeas petition, that counsels' unreasonable failure to raise the issues presented in these grounds at trial and on appeal presents independent grounds for federal habeas relief, as argued in Grounds Two, Three, Five, Six, Eight, and Nine.  Attorney errors can serve as cause to excuse a procedural default, but only if the attorney's deficient performance rose to the level of constitutionally ineffective assistance of counsel under the Sixth Amendment. *Coleman*, 501 U.S. at 754.  For reasons explained as I discuss each of Brown's claims of ineffective assistance below, I conclude that he has not demonstrated that any of counsel's challenged omissions violated his constitutional rights.  Therefore, Brown's assertions of ineffective assistance cannot serve as cause to excuse his procedural defaults, and Brown does not argue any other cause.  Accordingly, I will dismiss Grounds One, Four, and Seven as procedurally barred from federal habeas review.

B.  Ineffective Assistance of Counsel Claims.

1.  The Standard of Review.

Under the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

In the context of federal habeas review, the question is not whether a federal court would reach the same decision as the state court or even whether the federal court believes the state court's decision is correct.  A petitioner must convince the federal habeas court that the state court's decision was unreasonable, "a substantially higher threshold." *Knowles v. Mirazayance*, 556 U.S. 111, 123 (2009).[4]

> The term unreasonable refers not to ordinary error or even to circumstances where the petitioner offers a strong case for relief, but rather to extreme malfunctions in the state criminal justice system.  In other words, a federal court may intrude on a State's sovereign power to punish offenders only when a decision was so lacking in justification beyond any possibility for fairminded disagreement.

---

[4]  I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

*Mays v. Hines*, 141 S. Ct. 1145, 1149, *reh'g denied*, 141 S. Ct. 2693 (2021).

When reviewing claims that counsel provided ineffective assistance at trial or on appeal, a federal court must apply a highly deferential standard. A petitioner must show (1) that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of an exhausted § 2254 habeas claim, review of counsel's performance is "doubly deferential," because the *Strickland* standard overlaps with the deferential standard under 28 U.S.C. § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

To establish the element of deficient performance, a petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategic decisions. *Id.* at 689–90. Under § 2254(d), the performance question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard" of objective reasonableness. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

To establish prejudice, a petitioner must show that but for counsel's challenged conduct, there is a "reasonable probability that . . . the result of the proceeding would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because deficient performance and prejudice are "separate and distinct elements" of an ineffective assistance claim, if the petitioner fails to establish one of these elements, the court may dismiss the claim without addressing the other element. *Spencer v. Murray*, 18 F.3d 229, 232–33 (4th Cir. 1094); *Strickland*, 466 U.S. at 697. I will apply these deferential standards in reviewing Brown's ineffective assistance of counsel claims, all of which were rejected by the state habeas court.

2. The Sleeping Juror.

In Ground Two, Brown argues that trial counsel was ineffective in regard to the sleeping juror issue in three ways.[5] He contends that counsel unreasonably "failed to move the court to require the witnesses who observed Juror Smith 'nodding off . . . four times' to testify as to exactly what they observed." Pet. 21, ECF No. 1. Brown also faults counsel for failing "to move the [c]ourt to remove Juror Smith from the jury panel after his admission that he has a problem 'nodding off.'" *Id.*

---

[5] As discussed further herein, Brown raised the juror issue on direct appeal, but cited no authority. Brown does not challenge the state appellate courts' findings that he procedurally defaulted this claim on appeal by not providing legal authority to support it.

The state habeas court determined that these claims satisfied neither the "performance" nor the "prejudice" prong of the *Strickland* standard:

> The record, including the trial transcripts, demonstrates that on the third day of [Brown's] joint trial with [Carla], Evans[,] [Carla's defense counsel,] advised the trial court, "[I]t was relayed to me yesterday by some of my staff who's been observing the proceedings that it appears that a juror was nodding off yesterday during court." Evans identified the juror as Juror Smith, and stated, "I personally did not observe it, but I trust what my staff says and they said they observed it on four separate occasions." The trial judge then commented that he had been observing the jurors throughout the trial, making it a point to "look at all fourteen [jurors] in the face to make sure that they're paying attention," and that he had not observed a juror "nodding off." Nevertheless, the court called Juror Smith, placed him under oath, and asked him whether he "had any trouble paying attention during the course of [the] trial." Juror Smith replied, "No, sir." The court then stated, "Okay. There was some concern, someone thought that you might have nodded off or something." Juror Smith responded, "I do that. I've worked in the cold for forty-some years and sometimes in a hot room sitting still, I do this, but . . .[.]" At which point, the court interjected, "Do you feel comfortable that you've been awake and paying attention the whole time?" To which Juror Smith responded, "Yes, sir." The court then ordered Juror Smith back to the jury panel. [Brown's] counsel did not request the court interview the staff members who had observed Juror Smith and did not object or request removal of Juror Smith.
>
> "Whether [a] juror [is] . . . of sufficient . . . wakefulness to continue with the trial [is] a matter within the sound discretion of the trial court." *Ellis v. Commonwealth*, 227 Va. 419, 422 (1984). Here, in light of the trial court's own observations of the jurors' attentiveness and Juror Smith's sworn testimony that although he had a tendency to nod off in a warm room, he had been awake and paying attention the entire trial, counsel reasonably could have concluded that pursuing the matter further would have been unavailing. Counsel is not ineffective for failing to pursue a futile argument. *See Correll v. Commonwealth*, 232 Va. 454, 470 (1987). Furthermore, [Brown] does not allege, and the record does not establish, that Juror Smith was, in fact, sleeping at any point during the trial. "[J]ust because a juror's eyes [are] closed

[does] not mean that the juror was inattentive." *Mayo v. Commonwealth*, 10 Va. App. 335, 337 (1990).  Additionally, [Brown] does not allege the result of his trial would have been different had Juror Smith been removed from the jury panel and replaced with an alternate juror.   Thus, [Brown] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Br. Supp. Mot. Dismiss Ex. 5, at 2–3, ECF No. 8-5.

Brown has not established, nor can I find, as required under § 2254(d), that the state court's disposition of these claims was contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of fact. Brown complains that when asked during voir dire if he had any health issues or impairments that would prevent him from giving full attention during trial, Juror Smith should have informed the court about his tendency to nod off in warm rooms. Brown contends that Juror Smith's failure to admit this issue earlier impeached his credibility and, presumably, undermined the reliability of the juror's insistence that he had been paying attention even if he had nodded off.  The contention that Juror Smith had a health issue or impairment preventing proper attentiveness has no basis in fact from the record.  Nor does the record indicate that this juror had been sleeping in court.  From the juror's own explanation, his assurances that he had not missed anything, and the judge's personal observations of the jurors' attention levels, counsel could reasonably have determined that any further objection to the juror's continued service would not meet with success.  Counsel is not ineffective for failing

to make a futile motion or argument. *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005). Moreover, Brown has not articulated, let alone established, a reasonable probability that the outcome of the trial would have been different if counsel had made these desired objections and arguments.

In addition in Ground Two, Brown argues that after the court allowed Juror Smith to continue serving, counsel should have lodged a contemporaneous objection to preserve the issue for direct appeal. The state habeas court also rejected this claim under *Strickland*'s prejudice element:

> [Brown] does not allege, and the record does not establish, that had the alleged error been preserved, there is a reasonable probability the Court of Appeals [of Virginia] or [the Supreme Court of Virginia] would have determined the trial court committed reversible error in not removing Juror Smith from the jury panel, given the trial court's observations of the jurors' attentiveness and Juror Smith's sworn testimony that although he had a tendency to nod off in a warm room, he had been awake and paying attention the entire trial. Thus, [Brown] has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Br. Summ. Mot. Dismiss Ex 5, at 3, ECF No. 8-5.

Brown has not established, nor can I find as required under § 2254(d), that the state court's disposition of this portion of Ground Two was contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of fact. Given the trial court's factual findings that Smith had been attentive and could continue to give attention to the proceedings, Brown has shown no reasonable probability of a different outcome, had counsel lodged a formal objection. On this

record under § 2254(d), I must defer to the state court's judgment and dismiss all portions of Brown's Ground Two.

Brown revisits the sleeping juror contention in Ground Three, where he faults appellate counsel for failing to challenge on appeal the trial court's handling of this issue.  Specifically, Brown asserts that counsel should have raised the due process violation in Ground One under the "ends of justice exception" to Virginia Supreme Court Rule 5A:18; and under the "plain error" doctrine.  Pet. 21–22, ECF No. 1.

The state habeas court rejected these claims under *Strickland*'s prejudice element:

> The record, including [Brown's] petition for appeal filed in the Court of Appeals, the Court of Appeals' per curiam order denying the appeal, and the trial transcripts, demonstrates appellate counsel included an assignment of error in the petition for appeal, contending the trial court erred in failing to remove "a sleeping juror," i.e. Juror Smith.  The Court of Appeals concluded this assignment of error was waived and declined to consider it because the petition for appeal did not cite any legal authority to support the assertion, as required by Rule 5A:12(c), and the omission was significant.  [Brown], however, does not allege, and the record does not show, a reasonable probability that had counsel complied with Rule 5A:12(c), and asked the Court of Appeals to invoke the ends of justice exception, the result of [Brown's] appeal would have been different given the trial court's observations of the jurors' attentiveness and Juror Smith's sworn testimony that although he had a tendency to nod off in a warm room, he had been awake and paying attention the entire trial.  Thus, [Brown] has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Br. Supp. Mot. Dismiss Ex. 5, at 10–11, ECF No. 8-5.

Brown has not shown any reasonable probability that counsel's raising the Ground One due process arguments under either of the proffered state law doctrines would have resulted in a different outcome on appeal, given the state court's findings and the record as a whole. Thus, Brown has not demonstrated that the state court's ruling on this claim was contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of fact. I must defer to the state court's judgment under § 2254(d), and dismiss Ground Three.

3. Prejudicial Questioning.

In Ground Five, Brown claims that counsel was ineffective for failing to ask for a corrective jury instruction regarding the prosecutorial misconduct alleged in Ground Four regarding questions a police officer could not ask Brown, who had invoked his right not to be interviewed. Brown asserts that his counsel waited too long to object and that without a curative instruction, counsel allowed jurors to consider the prosecutor's improper questions as "testimony." Pet. 26, ECF No. 1.

The state habeas court rejected this claim under *Strickland*.

The record, including the trial transcripts, demonstrates [Brown] called Officer Wetherell as a witness. [Brown's counsel] elicited testimony from Officer Wetherell concerning her observations of [Brown's] demeanor and numerous spontaneous statements he made to her while she was stationed in his hospital room, where he was being treated after the offenses occurred. On cross-examination, Wetherell indicated that after she read [Brown] his *Miranda* rights,[6] he declined to be

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

interviewed, so she never got to question him.  The prosecutor then asked Officer Wetherell the following questions:

> Q. You didn't ask [Brown] why he used the knife on an unarmed woman . . .
>
> A. No, ma'am.
>
> Q. . . . . that was five foot four?
>
> A. I did not ask him any questions.
>
> Q. You didn't ask him why he stabbed another woman in the chest that was unarmed, did you?
>
> A. No.  He declined questioning.
>
> Q. Did you ask him about stabbing another unarmed person through the wrist?
>
> A. No, ma'am.
>
> Q. Did you ask him why he held Mac[k]enzie Gray at knife point and allowed his wife to beat her . . .
>
> A. No, ma'am.
>
> Q. . . . . after she'd been stabbed three times?
>
> A. No, ma'am.
>
> Q. Did you ask him why he stood at the 7-Eleven door guarding the door and barring it so other people couldn't get in?
>
> A. No, ma'am.

At that point, [Brown's] counsel objected on the basis that the questioning was argumentative.  The trial court sustained the objection and stated, "She's made it clear that [Brown] did not give any

statements."  Counsel did not seek a limiting or curative instruction regarding any testimony from Officer Wetherell.

> However, [Brown] does not allege, and the record does not show, a reasonable probability that had counsel objected sooner or requested a limiting or curative instruction the result of [Brown's] trial would have been different.

Br. Supp. Mot. Dismiss Ex. 5, at 3–4, ECF No. 8-5.  After a lengthy summary of the other trial evidence, the state court found that Brown could not meet the prejudice element of the *Strickland* standard.

> Given the overwhelming evidence of [Brown's] guilt, [Brown] cannot show a reasonable probability that had counsel objected sooner to the prosecutor's questioning of Wetherell or requested a curative instruction, the outcome of [Brown's] trial would have been different. Thus, [Brown] has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

*Id.* at 6.

Should counsel have objected more quickly to the prosecutor's questions? Should the court have directed the jurors not to consider the prosecutor's questions to the officer?  Perhaps.  But the jury had already heard and seen extensive evidence of Brown's use of a knife against unarmed young people — testimony from the surviving victims and their companions, other witnesses, photographs, and surveillance camera video footage.  On that record, I cannot find that the state court's ruling on this claim was contrary to, or an unreasonable application of, federal law,

or based on an unreasonable determination of fact.  Therefore, I must defer to the state court's judgment under § 2254(d) and dismiss Ground Five.

Brown raises a similar contention in Ground Six, claiming that his appellate counsel was ineffective in filing to present on appeal the due process and Fifth Amendment violations alleged in Ground Four.  Admitting that these violations had not been preserved for appeal, he asserts that appellate counsel should have argued for application of the "ends of justice exception" to Supreme Court of Virginia Rule 5A:18.  Pet. 28, ECF No. 1.

The state habeas court rejected this claim, holding that it satisfied neither the performance nor the prejudice element of *Strickland*.  The state court properly applied federal law holding that "the selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal."  Br. Supp. Mot. Dismiss Ex. 5, at 11, ECF No. 8-5 (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)).  It is well established that "appellate counsel is given significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle," and that "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000).

Furthermore, I agree with the state court that Brown has "fail[ed] to articulate or provide any argument to show a reasonable probability that had the argument he suggests been made on appeal, the result of his appeal would have been different." Br. Supp. Mot. Dismiss Ex. 5, at 11, ECF No. 8-5.  The questions the prosecutor asked did not introduce new or extraneous concepts.  Rather, these questions go to the heart of this case, questions that the video footage triggers in any viewer. Furthermore, Brown had an opportunity to counter address these questions when he testified.  And as the body tasked with determining credibility and finding facts, the jury found against Brown's theory that he was justified in defending his wife by wielding his knife.  Brown has not demonstrated that the state court's determination of this claim was contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of fact.  I will dismiss Ground Six.

    4.  Closing Argument Statements.

    In Ground Seven, Brown claims that his trial counsel was ineffective when he failed to object to improper comments the prosecutor made in closing arguments during the guilt phase of the trial, and failed to correct the improper comments during the defense closing.  In the first portion of this ground, Brown recognizes that one of the state court's instructions to the jury was that they could "infer malice due to [a] deadly weapon."[7]  Pet. 15, ECF No. 1.  Brown claims that the prosecutor, while

---

[7]  As the Court of Appeals of Virginia noted,

holding the "deadly weapon" up in front of the jury, "falsely characterized" this instruction by stating: "Lethal force, malice inferred with a deadly weapon. I think you can call this instead of a knife, let's just call it malice." *Id.* at 30–31. Brown faults counsel for failing to object to this prosecutorial action as a due process violation and failing to request a curative instruction.

The state habeas court rejected this claim, finding that Brown had not satisfied either element of *Strickland*.

> The record, including the trial transcripts and the jury instructions, demonstrates the jury was instructed before closing arguments that "[y]ou may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed." In the context of the jury instruction and the prosecutor's closing argument, counsel reasonably could have concluded the prosecutor was arguing a permissible inference to the jury, and that no objection or correction was proper. Further, counsel reasonably could have concluded that objecting would serve no purpose but to emphasize this portion of the prosecutor's closing argument in the jurors' minds. Such reasonable tactical decisions "should not be second-guessed in habeas corpus." *Morva v. Warden*, 285 Va. 511, 516 (2013). Furthermore, [Brown] does not allege, and the record does not show, a reasonable probability that had counsel corrected or objected to the prosecutor's statement, the result of [Brown's] trial would have been different. . . . [T]he Commonwealth's evidence of [Brown's] guilt was overwhelming. Thus, [Brown] has failed to demonstrate that

---

Malice "is of the essence of murder. It is the element that distinguishes it from manslaughter." *Moxlev v. Commonwealth*, 195 Va. 151, 157 (1953). "To reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation." *Barrett v. Commonwealth*, 231 Va. 102, 105–06 (1986).

Br. Supp. Mot. Dismiss Ex. 2, at 6 n.4, ECF No. 8-2.

counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Br. Supp. Mot. Dismiss Ex. 5, at 7–8, ECF No. 8-5.

I agree with the state court that counsel could reasonably have believed that the challenged statement was a permissible inference from the underlying instruction. Or counsel could also reasonably have decided, for strategic reasons, not to object to avoid calling juror's attention to the statement in a way not advantageous to Brown. *Strickland*, 466 U.S. at 690–91 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); *Moore v. United States*, 934 F. Supp. 724, 727 (E.D. Va. 1996) ("Many objections, while not lacking in technical merit, are either not worth making or may reasonably be viewed as likely to cause more harm if made than if foregone.") (citing other cases). Brown has not demonstrated that the state court's determination of this claim was contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of fact. I will dismiss this portion of Brown's federal habeas Ground Eight.

Another portion of Ground Eight asserts ineffective assistance related to another two sections of the prosecutor's closing argument at the guilt phase. Brown accuses the prosecutor of violating due process by "deliberately inflame[ing] the jurors' passion by invoking 'sense of community' in such a manner as to utilize

[Brown's] prior record . . . to procure the judgment of the jury" during the guilty phase. Pet. 31, ECF No. 1. After describing the three lethal stab wounds that Brown inflicted on Gray, the prosecutor stated:

> It looks like something you'd see in a war zone, not right here in the City of Harrisonburg. Remember, this is a public place. This is your town. This is Harrisonburg. This didn't happen in some far off place that you heard about on the news and you're like my God, what's going on there. That's like a mile up the street, right here, right here, your community. Look at this, Commonwealth's #2, they're spread out. It looks like a terrorist attack. It looks terrible.

*Id.* at 31–32. Several minutes later, during rebuttal argument, the prosecutor followed up on this community theme:

> [I] know I'm taking a lot of your time and this is it and you won't hear from me again until I hope I see you again at sentencing, if I could say one thing to you, if I can say one thing to Mackenzie Gray if she was sitting right here, Commonwealth's #132, I would say this. I would say I'm sorry, I want to apologize to you. I want to apologize to you on behalf of the criminal justice system because no matter what we do today we failed you. Even though it's not my personal thought, we failed, Mackenzie, because this man was free with twenty-one felonies and twenty-six crimes of lying, cheating or stealing he was walking the streets of Harrisonburg. We failed, me, the criminal justice system already failed Mackenzie Gray and as a result this violent killer was on the streets of Harrisonburg that night.

*Id.* at 32.

After reviewing these same sections of the closing, the state habeas court rejected Brown's ineffective assistance claim under the prejudice element of *Strickland*.

> [Brown], however, does not allege, and the record does not show, a reasonable probability that had counsel objected to the prosecutor's statements or requested a curative instruction the result of [Brown's] trial would have been different.   As previously stated, the Commonwealth's evidence of [Brown's] guilt was overwhelming. Additionally, the record, including the trial transcripts, demonstrates [Brown] testified in his own defense and acknowledged on cross-examination that he had been previously convicted of twenty-one felonies and twenty-six crimes involving lying, cheating or stealing. Thus, [Brown] has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Br. Supp. Mot. Dismiss Ex. 5, at 9, ECF No. 8-5.

Brown has not demonstrated, nor can I find, that the state court's determination of this claim was contrary to, or an unreasonable application of, federal law, or based on an unreasonable determination of fact.  As the summary of the Commonweath's case against Brown reflects, the evidence of his guilt was overwhelming.   Thus, the state court's finding that Brown failed to establish *Strickland* prejudice was reasonable.  I will dismiss this portion of Brown's federal habeas Ground Eight.

In Ground Nine, Brown claims ineffective assistance from his appellate counsel for failing to challenge on appeal the prejudicial statements during closing arguments.  Again, Brown admits that the claims were not properly preserved for appeal, but he faults counsel for failing to assert "plain error" by the trial court and invoke the "ends of justice exception" to Supreme Court of Virginia Rule 5A:18. Pet. 36, 37, ECF No. 1.

The state habeas court rejected this claim under *Jones*, 463 U.S. at 751–52, citing appellate counsel's duty and discretion to be selective in deciding on appeal claims.  The state court also held that Brown had failed "to articulate or provide any argument to show a reasonable probability that had the argument he suggests been made on appeal, the result of his appeal would have been different."  Br. Supp. Mot. Dismiss Ex. 5, at 12, ECF No. 8-5.  Accordingly, the state court held that he had not demonstrated either deficient performance by appellate counsel or resulting prejudice under *Strickland*.  I cannot find this disposition unreasonable in any respect.  *See Burket*, 208 F.3d at 189 (regarding importance of counsel's obligation to pursue only strongest claims on appeal).  Under § 2254(d), I will dismiss Ground Nine.

### C.  Insufficiency of the Evidence.

1.  The Standard of Review.

Sufficiency of the evidence to support a state court conviction beyond a reasonable doubt is a constitutional due process claim.  *Jackson v. Virginia*, 443 U.S. 307, 322 (1979).  The evidentiary standard for such a claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  Since Congress enacted § 2254(d) as part of AEDPA, the Supreme Court has made it clear that

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, . . . "it is the responsibility of the jury — not the [habeas] court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4, (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766, ___, 130 S. Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012). In other words, even when "[r]easonable minds reviewing the record might disagree" about the state courts' rulings on sufficiency, "on habeas review that does not suffice to supersede" those rulings under the deference demanded by § 2254(d). *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). To grant relief on a § 2254 habeas claim that centers on factual issues, such as a sufficiency of the evidence challenge, "a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at 339 (citing § 2254(d)(2). In making this determination under § 2254(d), the federal court may not "use a set of debatable inferences to set aside the conclusion reached by the state court." *Id.* at 342.

As stated, Brown challenged the sufficiency of the evidence in several respects on direct appeal. The Court of Appeals of Virginia denied relief on the claims in a

detailed, eleven-page per curium Order.  In denying Brown's subsequent appeal, the Supreme Court of Virginia did not issue an opinion.  Accordingly, this court "looks through" the Supreme Court of Virginia's refusal of the appeal and reviews the last reasoned opinion addressing the issue — from the Court of Appeals of Virginia. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

    2.  Brown's Sufficiency Claims.

    In Ground Ten, Brown asserts that the evidence was insufficient to support his convictions.  He insists that the video evidence played to the jury during trial "clearly depicts exactly what . . . transpired on that horribly tragic evening," and asks the court to view the video "in its entirety, in real time."  Pet. 38, ECF No. 1.  Liberally construing the Petition,[8] Brown alleges these somewhat overlapping claims that the evidence was not sufficient: (a) it did not support the finding of malice as a necessary element of the offenses of first-degree murder, attempted first-degree murder, and malicious wounding; (b) it did not prove that Brown shared any criminal intent with his wife to abduct Gray, so as to sustain a conviction of principal in the second degree

---

[8] Brown stated that in support of Ground Ten, he had submitted a "Memorandum In Support Of 'Ground Ten' of Habeas Petition."  Pet. 41, ECF No. 1.  That promised memorandum regarding Ground Ten was not attached to the Petition when Brown filed it with the court, and he did not provide a copy of it to the respondent until after the Motion to Dismiss had been filed.  The memorandum is attached to Brown's Response in Opposition, ECF No. 13.  Therefore, I have reviewed the arguments that it presents, and I find that it does not raise any habeas claims different from those raised in the Petition itself.

to abduction; and (c) it did not show premeditation because Brown's testimony and the video evidence prove that he "reacted in 'heat of passion' and only acted to 'protect his wife,' who was under violent, unlawful attack," while he and Carla "were both voluntarily intoxicated ,well beyond established legal limit." *Id.* at 40–41.

a. *Evidence of Malice.*

The Court of Appeals of Virginia addressed and rejected this aspect of Brown's sufficiency claim on the merits:

> "Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). Furthermore, "[malice may be inferred from the deliberate use of a deadly weapon." *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000). "[M]alice is implied by law from any deliberate, willful, and cruel act against another, however sudden." *Epperly* [*v. Commonwealth*, 224 Va. 214, 231 (1982)]. "In order to determine whether the accused acted in the heat of passion," as opposed to with malice, "it is necessary to consider the nature and degree of provocation as well as the manner in which it was resisted." *Id.* (quoting *Miller v. Commonwealth*, 5 Va. App. 22, 25 (1987)). "Whether malice existed is a question for the fact finder." *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000).

> . . . [T]he evidence showed that Brown, Gray, and Smith argued and that the argument turned into a physical altercation. Gray and [Carla] were on the ground with Gray on top of [Carla]. Neither woman possessed a weapon. However, instead of trying to separate the fighting women, [Brown], after saying he was going to "kill a bitch" or "bitches," pulled out a knife and forcefully stabbed Gray in the neck and torso, killing her. [Brown] also stabbed Gray's unarmed companions, Reed and Barnhardt.

[Brown's] statements and willful and measured acts of arming himself with the deadly weapon during the incident, then stabbing the unarmed victims indicated a "deliberate mind and formed design" rather than "impulse without conscious reflection." *See, e.g., Graham v. Commonwealth*, 31 Va. App. 662, 672 (2000) (finding the evidence insufficient to justify a heat of passion instruction where the defendant testified that he "consciously abandoned his escape, armed himself, and started shooting," and thus "acted upon reflection and deliberation" rather than "on sudden provocation or from passion"). Here, the jury acted as a reasonable fact-finder in rejecting [Brown's] claim that he was provoked into introducing a deadly weapon into the situation and stabbing three unarmed people. Consequently, the evidence was sufficient to show that [Brown] acted with malice during the incident.

Br. Supp. Mot. Dismiss Ex. 2, at 6–7, ECF No. 8-2.

Brown's arguments for relief on his insufficient evidence claims rely on the video evidence and primarily track counsel's closing argument for the defense, recounting Brown's version of his actions. Brown contends that the state courts "relied almost exclusively on the testimony" of Gray's companions which did not track events precisely, when compared to the video. Resp. Opp'n 22, ECF No. 13. Brown characterizes the testimony of Barnhardt, Reed, Valentine, and Smith as "largely fabricated." *Id.* at 23. Brown notes, "Not many people consider a 3-½" pocket knife as a 'deadly weapon." *Id.* at 28. Brown also challenges the credibility of the inmate witnesses.

The video footage, which Brown calls "irrefutable evidence of exactly what happened," includes no audio from the incident. *Id.* at 23. Thus, the video alone does not discredit witness testimony about statements Brown made during the

encounter.  As for the inmate witnesses, the state court referred to this testimony merely as "consistent" with other witness accounts "that prior to the incident [Brown] had stated that he was going to 'kill' or 'get' those people involved in the disagreement at the Golden Pony."  Br. Supp. Mot. Dismiss Ex. 2, at 4 n.1, ECF No. 8-2.

Even if I believed Brown's version of events to be the most accurate account of the melee depicted in the video footage, my reaching a different conclusion on sufficiency that the court of appeals, or believing its decision to be incorrect, would not support a ruling in Brown's favor.  Under the deference mandated by § 2254(d), to grant habeas relief on Brown's sufficiency challenges, I would have to find that the state courts' decisions on those claims were objectively unreasonable — that they lacked justification "beyond any possibility for fairminded disagreement." *Mays,* 141 S. Ct. at 1149.

I cannot reach that conclusion here.  After viewing the video, I agree that the jury acted as a reasonable fact finder in finding beyond a reasonable doubt that Brown acted with malice during the altercation.  At the most, Brown's opposition arguments present alternative and debatable interpretations of the evidence of malice.  But "fairminded disagreement" in inferring facts from evidence is not sufficient to prove that the jurors' decisions, or the state court's factual findings about the bases for those decisions, were objectively unreasonable as required under

§ 2254(d).  *Id.*  Thus, I cannot find that the state appellate courts rested their rejection of Brown's sufficiency claim regarding malice on an unreasonable determination of the facts from the evidence presented.

In finding the evidence sufficient to support the convictions, the court did not apply the law unreasonably, either.  It accepted as true all evidence favorable to the Commonwealth, and all inferences reasonably drawn from that evidence.  Because the state court applied the correct standard of law, as set out in *Jackson*, the state court decision is not contrary to federal law.  I will dismiss Brown's claim in Ground Ten alleging that his actions did not support a finding of malice.

b.  *Principal in the Second Degree to Abduction.*

Brown also asserts an insufficiency claim as to his conviction of being a principal in the second degree to abduction, alleging that no evidence proved that he or Carla had criminal intent to abduct Gray.  He raised a similar assertion in his petition for appeal, but the court of appeals found that his petition did "not contain an assignment of error for this argument."  Br. Supp. Mot. Dismiss Ex. 2, at 7 n. 5, ECF No. 8-2.  The court noted,

> "Only assignments of error assigned in the petition for appeal will be noticed by this Court."  Rule 5A:12(c)(l)(i).  An issue that is not part of appellant's assignment of error in the petition for appeal is considered waived.  *See Simmons v. Commonwealth*, 63 Va. App. 69, 75 n.4 (2014). Therefore, we do not address this argument.

*Id.* Brown argues that I should address his federal claim of insufficient evidence on this issue on the merits because the Court of Appeals of Virginia failed to do so.

I cannot agree. Because the state court has explicitly denied this claim based on a state procedural rule, namely Rule 5A:12(c), the claim is also procedurally defaulted for purposes of federal habeas review. *Breard*, 134 F.3d at 619); *Escalante v. Watson*, 488 F. App'x 694, 699 (4th Cir. 2012) (unpublished) (finding that Virginia rule requiring assignments of error in appellate petitions is independent and adequate state law ground for purposes of procedural default). Brown has not demonstrated cause and prejudice for his default of this claim in his petition for appeal. Therefore, I will dismiss this claim as procedurally barred.

   c. *Premeditation and Intent to Kill.*

Brown asserts that he acted in the heat of passion to defend his wife when he stabbed Gray and Reed, not with premeditation or intent to kill either of them. The Court of Appeals of Virginia found the evidence of premeditation sufficient to support the first-degree murder and attempted murder convictions.

> [Virginia] Code § 18.2-32 provides, in relevant part, that "[m]urder . . . by any willful, deliberate, and premeditated killing . . . is murder of the first degree." "An attempt is composed of two elements: the intent to commit the crime, and a direct, ineffectual act done towards its commission." *Parsons v. Commonwealth*, 32 Va. App. 576, 582 (2000).

> "To premeditate means to adopt a specific intent to kill, and that is what distinguishes first and second degree murder." *Kirby v. Commonwealth*, 50 Va. App. 691, 700 (2007) (quoting *Remington v.*

*Commonwealth*. 262 Va. 333, 352 (2001)).  Such intent "need not exist for any specified length of time prior to the actual killing; the design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill." *Remington*, 262 Va. at 352 (quoting *Weeks v. Commonwealth*, 248 Va. 460, 477 (1994)); see *Epperly v. Commonwealth*, 224 Va. 214, 231 (1982) ("It is the will and purpose to kill, not necessarily the interval of time, which determine the grade of the offense.").  Circumstantial factors related to the killing itself can support a reasonable inference of premeditation.  *Avent v. Commonwealth*, 279 Va. 175, 208 (2010) (quoting *Epperly*, 224 Va. at 232).

The evidence showed that a verbal confrontation occurred between [Carla] and others at a convenience store.  The confrontation quickly escalated to a physical fight.  [Brown] threatened to "kill all of these bitches tonight" and that "one of you bitches is going to die."  Despite attempts by Valentine and Barnhardt to diffuse the situation, [Brown] stabbed Reed and Barnhardt.  [Brown] then also stabbed the defenseless Gray, inflicting wounds more than three inches deep into her neck and torso, ultimately killing her.  No evidence indicated that anyone other than [Brown] brandished a knife during the incident.  Furthermore, after the knife attacks, [Brown] "guarded" [Carla] while she beat the mortally wounded Gray inside the convenience store.

In addition to the testimony of the witnesses, the jury viewed numerous surveillance video recordings and still photographs made from the video recordings and taken at the scene of the crimes.

The jury could reasonably infer that [Brown] intended to kill Gray from the scope and degree of the injuries suffered by Gray, [Brown's] statements that he was going to kill one or all of the "bitches," and [Brown's] repeated, forceful stabbing to Gray's neck and torso as she was held by her hair, defenseless, and unarmed.  Furthermore, a reasonable jury could infer from [Brown's] statements and conduct of stabbing Reed in the chest and back of her head that he also acted with the intent to kill Reed.  Additionally, [Brown] admitted that he is a "strong man," and the videos showed that [Brown] was large.  Further, he stabbed both women multiple times.  *See Avent*, 279 Va. at 208 (noting that the brutality of the attack, the number of blows, and disparity in strength between the defendant and the victim can

support a reasonable inference of premeditation).  Moreover, the jury could reasonably find that [Brown] lacked remorse for his crimes when he shouted, "Mother fuckers.  You mother fuckers," and "Mother fucking bitch" at the scene.  *See Epperly*, 224 Va. at 232 (observing that a fact finder may infer the accused's premeditation from lack of remorse).  The jury, in its role as the trier of fact, was entitled to disbelieve [Brown's] explanations that he tried to "diffuse" the situation and did not intend to hurt anyone.  *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509–10 (1998))).  Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that [Brown] committed first-degree murder and attempted first-degree murder.

Br. Supp. Mot. Dismiss Ex. 2, at 4–6, ECF No. 8-2 (footnotes omitted).

In Brown's response, he faults the state court's finding that he showed lack of remorse at the scene when he shouted profanities.  Brown blames these statements on pain and other effects from head injuries he had received during the altercation. He emphasizes that when he made the statements, he did not yet know how severely his blows had injured anyone or that Gray had died.  He points to testimony from a police officer that when Brown learned of Gray's death, he "wailed . . . . He was crying, he was emotional."  Resp. Opp'n 27, ECF No. 13.  Brown asserts that [a]ny reasonable person would conclude that [he] had remorse" over Gray's death.  *Id.*

Brown also denies any attempt on his part to deceive police after the incident. He asserts that when he told police he had been stabbed, he was suffering from a head injury and believed he had been stabbed.  He also claims to have seen Smith in

possession of a "purple handled knife" at some point during the encounter.  *Id.* at 28.

Finally, Brown contends that viewing the video "in 'real time' disproves the alleged

facts" on which the state courts rejected his sufficiency of the evidence challenges.

*Id.*  He asserts, as he did during his trial testimony, that the video shows him reacting

to the assault on his wife in the heat of passion and not with any premeditated intent

to kill.

Reviewing the record as a whole, I find that the evidence supported reasonable

inferences of Brown's premeditation and intent to kill.  To find these elements, jurors

did not have to believe the inmate witnesses or to find that Brown failed to show

remorse.[9]  The video shows that Brown had opportunity during the altercation to

pause and assess, to use words and his physical strength to try to separate the

unarmed combatants, to try to convince Carla to leave and not to enter the store after

he already fatally injured Gray.  Brown chose another course of action when he took

out and forcefully used his knife multiple times and when he followed Carla into the

store and blocked interference with her continued assault on Gray.  Jurors also could

infer premeditation and intent to kill from the forcefulness of Brown's stabbing

motions, his repeated stabs of Reed and Gray in vital locations, and the depth of the

---

[9]  In finding sufficient evidence of premeditation, the Court of Appeals of Virginia did not discuss Brown's voluntary intoxication.  The trial court instructed the jury on this aspect of Brown's defense, but the jury could reasonably have found from his actions depicted on the video that he was not so intoxicated that he was unable to premeditate or formulate the intent to kill Gray and Reed.

stab wounds on all the victims.  Brown simply fails to show that the state courts' rejection of his heat of passion theory and their finding of sufficient evidence of premeditation lacked justification "beyond any possibility for fairminded disagreement." *Mays*, 141 S. Ct. at 1149.  Thus, he has not shown that the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence.  Under § 2254(d), I will dismiss the premeditation portion of Ground Ten.

### III. CONCLUSION.

For the stated reasons, I will grant the respondent's Motion to Dismiss.

I decline to issue a certificate of appealability because Brown has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural ruling to be debatable or wrong.

A separate Final Order will be entered herewith.

DATED:  March 31, 2023

/s/  JAMES P. JONES
Senior United States District Judge